AURORA MEDICAL GROUP, Petitioner-Appellant,†

v.

DEPARTMENT OF WORKFORCE DEVELOPMENT, Equal Rights Division and Kristine E. Meyers, Respondents-Respondents.

Court of Appeals

*No. 98–1546. Submitted on briefs July 6, 1999.—Decided September 7, 1999.*

(Also reported in 602 N.W.2d 111.)

†Petition to review granted.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Mary Pat Ninneman* and *Carmella A. Huser* of *Quarles & Brady,* of Milwaukee.

On behalf of the respondent-respondent Department of Workforce Development, Equal Rights Division, the cause was submitted on the brief of *Richard Briles Moriarty,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general. On behalf of the respondent-respondent Kristine E. Meyers, the cause was submitted on the brief of *Jeffrey P. Sweetland* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer,* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Aurora Medical Group appeals from the circuit court order affirming the Department of Workforce Development's decision regarding Kristine E. Meyers' complaint that her employer, Aurora, refused to honor her request to substitute paid sick time for unpaid statutory family leave. The Department concluded that even though Meyers was not eligible to take sick leave under the terms of Aurora's sick pay plan, Aurora discriminated against

Meyers by "interfering with, restraining, or denying the exercise of a right provided under [the Wisconsin Family and Medical Leave Act]" when it refused to allow her to substitute 96.9 hours of paid sick time for unpaid statutory leave.

¶ 2.  Aurora contends that Meyers' state law claim under the Wisconsin Family and Medical Leave Act (WFMLA) is preempted by the federal Employee Retirement Income Security Act (ERISA). In support of this contention, Aurora argues that the federal Family and Medical Leave Act (FFMLA) "did not nullify the scope of ERISA preemption" and that Congress did not intend to protect the substitution provision of WFMLA from ERISA preemption. We reject Aurora's theory and affirm.

## BACKGROUND

¶ 3.  Aurora's employee sick pay benefits are funded through a tax-exempt voluntary employees' beneficiary association, and paid through a sick pay plan that qualifies as an employee welfare benefit plan under ERISA. The terms of the sick pay plan authorize payment of sick time benefits to an employee only when the employee is ill.

¶ 4.  Meyers, a registered nurse, began working for Aurora on July 20, 1995. In January 1997, she requested family leave from January 24 to March 10 for the adoption of a child. She asked that paid sick, holiday/personal, and vacation time be substituted for unpaid statutory leave. Aurora granted Meyers' request for family leave, but notified her that because she was not ill, she would not be allowed to substitute paid sick time for unpaid family leave. Thus, Aurora allowed Meyers to substitute 12.0 hours of paid holiday/personal time and 40.4 hours of paid vacation time

for unpaid family leave. If Aurora had allowed Meyers to substitute paid sick time as she had requested, 96.9 hours of paid sick time, 12.0 hours of paid holiday/personal time, and 11.1 hours of paid vacation time would have been substituted for her unpaid family leave. Meyers then would have had 29.3 hours of unused accrued vacation time upon her return from leave.

¶ 5. Based on the parties' briefs and stipulation of facts, an administrative law judge (ALJ) concluded that Aurora discriminated against Meyers, in violation of § 103.10, STATS. The ALJ ordered that Aurora make Meyers whole by: (1) paying her $1,039.01, the amount she would have received as additional compensation during her leave if the sick pay substitution had been allowed; (2) crediting her vacation time accrual bank with 29.3 hours, the amount she would not have used if Aurora had permitted the sick pay substitution; (3) reducing her sick leave accrual by 96.9 hours, the amount of time she would have used if the sick pay substitution had been allowed; and (4) reimbursing her for interest on the damages at the rate of 12% annually, simple interest. The ALJ also ordered Aurora to pay Meyers $5,296.25 for attorney's fees and costs.

¶ 6. Aurora petitioned the circuit court for judicial review, claiming the Department had no jurisdiction over Meyers' claim because it was preempted by ERISA. Meyers requested that Aurora's petition be dismissed and that the Department's decision and order be affirmed. On April 17, 1998, the circuit court affirmed the Department's decision. Aurora appeals.

## DISCUSSION

¶ 7. The preemptive effect of a federal law on WFMLA presents a question of law. *See Miller Brewing Co. v. DILHR, Equal Rights Division*, 210 Wis. 2d 26, 33, 563 N.W.2d 460, 463 (1997). Aurora argues that because the supreme court, in *Miller*, concluded that the Department had no special expertise in determining whether ERISA preempted WFMLA, we should review the Department's decision *de novo*. The Department responds:

> Since judicial review in *Miller* commenced in 1990, only two years after the enactment of [WFMLA], the preceding agency record, unsurprisingly, displayed "no real evidence of any special agency expertise or experience" on the interplay between federal preemption and [WFMLA]. By 1997, when the decision issued [in the instant case], the Department had several occasions to examine that interplay and, monitoring ongoing developments, had become familiar with the nuances of that interplay.

(citations and record references omitted). Thus, the Department requests that its decision be granted due weight deference. Additionally, the Department contends that its determination should be affirmed regardless of the standard of review we apply. We need not resolve the parties' dispute over the standard of review because, even applying the *de novo* standard, we conclude that the Department's decision was correct.

¶ 8. As the parties acknowledge, ERISA Subchapter I (addressing protection of employee benefit rights) indicates that its provisions supersede state laws regarding sick pay plans such as the one at issue

403

in this case. *See* 29 U.S.C. § 1144(a) (1998). The same subchapter, however, also states that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." *See* 29 U.S.C. § 1144(d) (1998). ERISA, therefore, does not supersede FFMLA.

¶ 9.   FFMLA states: "Nothing in this Act *or any amendment made by this Act* shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act." 29 U.S.C. § 2651(b) (1998) (emphasis added). FFMLA also states that "[t]he rights established for employees *under this Act or any amendment made by this Act* shall not be diminished by any . . . employment benefit program or plan." 29 U.S.C. § 2652(b) (1998) (emphasis added). Therefore, to the extent to which ERISA is amended by FFMLA, ERISA must yield to any provisions of WFMLA providing greater family leave rights than those provided by FFMLA.

¶ 10.   Under FFMLA, an employee is allowed to substitute accrued paid vacation, personal, or family leave for unpaid family leave for the adoption of a child. *See* 29 U.S.C. § 2612(d)(2)(A) (1998). Under WFMLA, "[a]n employe[e] may substitute, for portions of family leave or medical leave, paid or unpaid leave *of any other type* provided by the employer." Section 103.10(5)(b), STATS. (emphasis added). Because the substitution rights provided under WFMLA are greater than those provided under FFMLA, they are not preempted by FFMLA.

¶ 11.   This conclusion, however, does not resolve the issue of whether ERISA preempts the substitution

rights provided by WFMLA. As the supreme court noted in *Miller*:

> The pre-emption doctrine is rooted in article VI of the United States Constitution, which is commonly referred to as the Supremacy Clause. The question of whether federal law pre-empts state law is one of congressional intent. Federal law pre-empts state law in three situations: (1) where Congress explicitly mandates pre-emption of state law; (2) where Congress implicitly indicates an intent to occupy an entire field of regulation to the exclusion of state law; or, (3) where state law actually conflicts with federal law. The [party seeking the benefit of preemption] bears the burden of establishing pre-emption.

*Miller*, 210 Wis. 2d at 34–35, 563 N.W.2d at 464 (citations omitted). Aurora has failed to meet its "burden of establishing pre-emption." *See id.* at 35, 563 N.W.2d at 464.

¶ 12. In interpreting the scope of the preemptive effect of ERISA, we are bound by the presumption that federal statutory law does not supersede the police powers of the State unless that is " 'the clear and manifest purpose of Congress.' " *See id.* (quoted source omitted). Aurora notes that the Department of Labor (DOL) has the authority to issue regulations related to both ERISA and FFMLA and contends that the DOL "made no mention of ERISA pre-emption of state laws under § 2651(b)" in FFMLA regulations because it lacked authorization from Congress "to expand § 2651(b) beyond [FFMLA] itself." Aurora argues that "[t]he only conclusion that reasonably can be drawn from the absence of such language in either the text of [FFMLA] or the implementing regulations drafted by the DOL is that Congress did not intend to eliminate

405

well-established principles of federal pre-emption, except as explicitly provided in the statute." Aurora also contends that it would be inappropriate to examine FFMLA's legislative history because there is no ambiguity in the statute's preemption language. We are not persuaded by Aurora's arguments.

¶ 13. As the United States Supreme Court declared well over a century ago:

> [I]t is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning.
>
> Neither will the court, in expounding a statute, give to it a construction which would in any degree disarm the government of a power which has been confided to it to be used for the general good . . . unless plain and express words indicated that such was the intention of the Legislature.

*Brown v. Duchesne*, 60 U.S. 183, 194–95 (1857). Additionally, the Supreme Court has held: (1) "the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation' "; and (2) comments from the floor debates are less authoritative than Committee Reports. *See Garcia v. United States*, 469 U.S. 70, 76 (1984) (citations omitted).

¶ 14. The Department contends that "the sponsors [of FFMLA] intended to insulate State family and

medical leave provisions from all federal preemption." The Department is correct. As the Senate Committee on Labor and Human Resources reported:

> Section 401(b) [of Public Law 103–3—now known as 29 U.S.C. § 2651(b)] makes it clear that state and local laws providing greater leave rights than those provided in [FFMLA] are not preempted by the bill or any other federal law. . . .
>
> For example, . . . Wisconsin State law provisions under which employees may substitute paid or unpaid leave of any other type provided by the employer for portions of family leave or medical leave would not be superseded by [FFMLA].
>
> Section 401(b) also clarifies that state family leave laws at least as generous as that provided in [FFMLA] (including leave laws that provide . . . paid leave), are not preempted by ERISA . . . .

S. REP. NO. 103–3, at 38 (1993), *reprinted in* 1993 U.S.C. C.A.N. 3, 40.

¶ 15. Declarations during United States Senate floor debate in 1993 further support the Department's contention. Prior to the Senate's final vote, Senator Christopher Dodd, the Senate's primary sponsor of FFMLA, responded to requests for confirmation of intent:

> [WISCONSIN SENATOR] FEINGOLD. [ ] Is it the intent of the sponsors of this bill that the provisions of [ERISA], as amended, shall not prevent the substitution of accrued paid leave, regardless of the source of funding for the paid leave?
>
> [SENATOR] DODD. Yes. . . . The provisions of [FFMLA] are intended to supersede ERISA and any Federal law. The authors of this legislation intend to prevent ERISA and any other Federal law from undercutting the family and medical leave laws of

States that currently allow the provision of substitution of accrued paid leave for unpaid family leave, regardless of the nature of the family leave, so long as those State law provisions are at least as generous as those of this Federal legislation. Certainly, if Wisconsin law allows either an employer or an employee to substitute accrued paid leave to care for a newly born or adopted child on terms at least as generous as in this legislation, it is our intent that no Federal law prevent Wisconsin law from making this allowance.

. . . .

[WISCONSIN SENATOR] FEINGOLD. Is it the intent of the bill sponsors that the provisions of neither ERISA nor any other Federal law would preempt any provisions of any State family or medical leave law to the extent those provisions are at least as generous as the provisions in this Federal legislation?

[SENATOR] DODD. Yes; it is certainly our intent that, as Federal legislation enacted subsequent to ERISA, [FFMLA] supersedes ERISA to the extent ERISA preempts any State leave law provisions which are at least as generous as the provision of [FFMLA]. The same principle applies to any other previously enacted Federal law. Enactment of [FFMLA] allows States to provide leave on terms as generous or beneficial, or even more generous or beneficial, to workers. Both ERISA and all other Federal laws which would interfere with this intent in any way are clearly superseded to that extent. [FFMLA] makes clear that any provisions of any State leave laws that are at least as generous or beneficial to workers as those in [FFMLA] will not be preempted by ERISA or any other Federal law.

408

[WISCONSIN SENATOR] KOHL. If only some of the provisions of a State law are at least as generous or beneficial to workers as [FFMLA], is it the intent of the sponsors that those provisions are not preempted by this or any other Federal law?

[SENATOR] DODD. Yes.

139 CONG. REC. S1254, 1347–48 (daily ed. Feb. 4, 1993).
    ¶ 16.    Statements during the House of Representatives floor debate in 1991 also bolster the Department's contention. As noted by Representative William Goodling:

[T]he intent of this bill is to modify the preemption provisions of ERISA, noting that [FFMLA] should be interpreted to protect benefit-related provisions of state family leave laws from preemption by ERISA. This discussion is expressly targeted at reversing a . . . Wisconsin case which found that provisions of Wisconsin's leave law relating to substitution of leave [were] preempted by ERISA.

137 CONG. REC. H9722–02, 9725 (daily ed. Nov. 13, 1991). Additionally, Representative Bart Gordon observed:

It is the intent of the sponsors of this bill that the provisions of [ERISA], as amended, would not preempt any provisions of State family and medical leave legislation. As Federal legislation enacted subsequent to ERISA, [FFMLA] supersedes ERISA to the extent that ERISA might be held to preempt State leave law provisions. Enactment of [FFMLA] will still allow States to provide even more generous leave protections for workers. [FFMLA] makes clear that State family and medical leave laws that are at least as generous as the Federal legislation are not preempted by ERISA or any other Federal law.

409

137 CONG. REC. H9761–01, 9776 (daily ed. Nov. 13, 1991). Thus, both the Senate and House history confirm the Department's understanding of the law.

■

¶ 17. Therefore, we conclude that Meyers' state law claim under WFMLA is not preempted by ERISA. Accordingly, we also conclude that Meyers is entitled to substitute paid sick time for unpaid statutory family leave although the terms of the sick pay plan authorize payment of sick time benefits to an employee only when the employee is ill. *See Richland Sch. Dist. v. DILHR, Equal Rights Div.*, 174 Wis. 2d 878, 894, 498 N.W.2d 826, 832 (1993) (holding that § 103.10(5)(b), STATS., "requires a covered employer to allow an employe[e] entitled to leave under [WFMLA] to substitute accrued employer-provided leave without regard to whether all conditions of leave eligibility for the employer-provided leave [have] been met.").

*By the Court.*—Order affirmed.