AURORA MEDICAL GROUP, Petitioner-Appellant-Petitioner,

v.

DEPARTMENT OF WORKFORCE DEVELOPMENT, Equal Rights Division and Kristine E. Meyers, Respondents-Respondents.

Supreme Court

*No. 98–1546. Oral argument May 3, 2000.—Decided June 27, 2000.*

2000 WI 70

(Also reported in 612 N.W.2d 646.)

For the petitioner-appellant-petitioner there were briefs by *Mary Pat Ninneman, Carmella A. Huser* and *Quarles & Brady, LLP,* Milwaukee, and oral argument by *Carmella A. Huser.*

For the respondent-respondent, Department of Workforce Development, Equal Rights Division, the cause was argued by *Richard Briles Moriarty,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the respondent-respondent, Kristine E. Meyers, there was a brief by *Jeffrey P. Sweetland* and *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer,* Milwaukee, and oral argument by *Jeffrey P. Sweetland.*

An amicus curiae brief was filed by *Scott C. Beightol, Amy Schmidt Jones* and *Michael Best & Friedrich LLP,* Milwaukee, on behalf of Wisconsin Manufacturers and Commerce.

An amicus curiae brief was filed by *Marianne Goldstein Robbins* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* Milwaukee, on behalf of the Wisconsin State AFL-CIO.

An amicus curiae brief was filed by *Henry L. Solano, Nathaniel I. Spiller, Jeffrey S. Goldberg* and *Ellen L. Beard,* Washington, D.C., on behalf of the U.S.

Department of Labor, and oral argument by *Ellen L. Beard.*

An amicus curiae brief was filed by *Louise G. Trubek*, Madison, and *Judith L. Lichtman*, Washington, D.C., on behalf of the National Partnership for Women and Families; Center for Public Representation, Inc.; 9to5, National Association of Working Women; Milwaukee 9to5; and 9to5 Poverty Network Initiative.

¶ 1. N. PATRICK CROOKS, J. Aurora Medical Group (Aurora) seeks review of a published decision of the court of appeals[1] that affirmed a judgment of the Circuit Court for Milwaukee County, Victor Manian, Judge. The court of appeals held that § 514(a) of the federal Employment Retirement Income Security Act (ERISA)[2] does not pre-empt Kristine E. Meyers' (Meyers) claim under the Wisconsin Family and Medical Leave Act (Wisconsin FMLA).[3] We agree that Meyers'

[1] *Aurora Medical Group v. Department of Workforce Dev.*, 230 Wis. 2d 399, 602 N.W.2d 111 (Ct. App. 1999).

[2] Section 514(a)of ERISA provides in relevant part:

> (a) "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a)(1999). (All future references are to the 1999 Code unless otherwise indicated.)

[3] The Wisconsin FMLA is at Wis. Stat. § 103.10 (1997–1998). (All future references are to the 1997–1998 Statutes unless otherwise indicated.) Section 103.10 provides in relevant part:

> (3) FAMILY LEAVE. (a)1. In a 12-month period no employe may take more than 6 weeks of family leave under par. (b) 1. and 2.
> . . .(b) An employe may take family leave for any of the following reasons:

4

state law claim is not pre-empted by federal law, and therefore affirm the decision of the court of appeals.

## I.

¶ 2. The relevant facts are not in dispute.[4] Aurora has employed Meyers as a part-time registered nurse since July 20, 1995. During the relevant time period, Aurora employed 50 or more employees and Meyers worked more than 1000 hours.[5] On January 30, 1997, Meyers requested family leave to adopt a child, covering January 24 to March 10, 1997. Meyers also requested to substitute paid sick time, as well as vacation and holiday/personal time, for the unpaid family leave.

¶ 3. On February 4, 1997, Aurora granted Meyers' leave request. However, Aurora informed Meyers that she could not substitute her paid sick time for the unpaid family leave because she was not ill. Aurora pays sick time from a separate fund, a Sick Pay Plan, and, according to the terms of Aurora's plan, sick time is not paid unless the employee is ill. Aurora's plan is a welfare benefit plan under ERISA.[6]

---

. . .2. The placement of a child with the employe for adoption. . . .

. . .(5) PAYMENT FOR AND RESTRICTIONS UPON LEAVE. (a) This section does not entitle an employe to receive wages or salary while taking family leave or medical leave.

(b) An employe may substitute, for portions of family leave or medical leave, paid or unpaid leave of any other type provided by the employer.

[4] Meyers and Aurora stipulated to the pertinent underlying facts before the administrative law judge in lieu of a hearing.

[5] Wis. Stat. § 103.10(1)(c), (2)(c).

[6] Our review is limited to the record in this case, which includes the stipulation that Aurora's Sick Pay Plan is a welfare benefit plan within ERISA's definitions. Wis. Stat. § 227.57

¶ 4. Meyers substituted paid vacation and holiday/personal time for her unpaid leave. Had Aurora allowed her to substitute paid sick leave, Meyers would have had 29.3 hours of unused vacation time when she returned to work on March 10, 1997.

¶ 5. On February 20, 1997, Meyers filed a complaint with the Department of Workforce Development (DWD), Equal Rights Division (ERD). Meyers' complaint alleged that Aurora violated her rights under the Wisconsin FMLA, Wis. Stat. § 103.10(5)(b). To prove a violation of § 103.10(5)(b), Meyers had to establish that (1) at the time she requested leave, she was covered by the Wisconsin FMLA; (2) she asked to substitute other leave for family leave; (3) Aurora provided leave that could be substituted;[7] (4) she had accrued the leave to be substituted; and (5) Aurora denied the substitution request. *Miller Brewing Co. v. DILHR*, 210 Wis. 2d 26, 31, 563 N.W.2d 460 (1997) (citing *Leher v. Consolidated Papers, Inc.*, 786 F. Supp. 1480, 1485 (W.D. Wis. 1992)).

¶ 6. After the ERD concluded that there was probable cause to believe that Aurora violated the Wisconsin FMLA, Meyers and Aurora stipulated, in effect, to facts establishing the above five elements. In lieu of a hearing and based upon the stipulation of facts, the

(1997–98). We render no opinion whether Aurora's plan is actually an ERISA plan. Instead we address the important issue of whether ERISA pre-empts employee substitution rights under the Wisconsin FMLA.

[7] "An employer must provide leave that is definite and quantifiable in order for such leave to be available for substitution under the [Wisconsin] FMLA." *Miller Brewing Co. v. DILHR*, 210 Wis. 2d 26, 31 n.6, 563 N.W.2d 460 (1997) (citing *Richland Sch. Dist. v. DILHR*, 174 Wis. 2d 878, 895–96, 498 N.W.2d 826 (1993)).

administrative law judge (ALJ) concluded that ERISA did not pre-empt Wisconsin FMLA's substitution right, as Aurora contended, and that Aurora had thus interfered with, restrained, or denied Meyers' right of substitution under the Wisconsin FMLA. The ALJ relied upon the language of § 401(b) of the federal Family and Medical Leave Act (federal FMLA) that "[n]othing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act." 29 U.S.C. § 2651(b). According to the ALJ, § 514(d) of ERISA[8] dictates that ERISA is subordinate to § 401(b) of the federal FMLA. Consequently, because § 401(b) of the federal FMLA allows the Wisconsin FMLA's substitution provision to apply to sick pay plans covered by ERISA, ERISA did not pre-empt the Wisconsin FMLA's leave substitution. The ALJ also found that the federal FMLA was sufficiently ambiguous to warrant reviewing the legislative history that supported the determination of no pre-emption.

¶ 7. The ALJ ordered Aurora to credit Meyers 29.3 hours in the vacation time she used instead of her paid sick time and to reduce Meyers' sick leave by the time she would have used to substitute for the unpaid family leave. The ALJ also ordered Aurora to pay Meyers the amount she would have received in compensation had she been permitted to substitute her paid sick leave, plus interest, and attorney's fees and costs.

---

[8] Section 514(d) of ERISA provides in relevant part:

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States. . . .29 U.S.C. § 1144(d).

¶ 8. Aurora petitioned the circuit court for judicial review of the ALJ's decision pursuant to Wis. Stat. § 227.53. The circuit court, on *de novo* review, relied upon the language of the federal FMLA and ERISA, as well as the federal FMLA's legislative history to affirm the ALJ's decision.

¶ 9. Aurora then appealed to the court of appeals, which affirmed the decision below, holding that Aurora "failed to meet its 'burden of establishing pre-emption.' " *Aurora Medical Group v. Department of Workforce Dev.*, 230 Wis. 2d 399, 405, 602 N.W.2d 111 (quoting *Miller Brewing Co.*, 210 Wis. 2d at 35). The court of appeals relied upon the federal FMLA's legislative history as an indication that the federal FMLA was intended to insulate provisions of state medical and family leave statutes. *Aurora*, 230 Wis. 2d at 406–410.

¶ 10. We granted Aurora's petition for review of the court of appeals decision.

## II.

¶ 11. Whether § 514(a) of ERISA pre-empts the Wisconsin FMLA is a question of law. *Miller Brewing Co.*, 210 Wis. 2d at 33 (citing *International Ass'n of Machinists & Aerospace Workers, IAM Local 437 v. U.S. Can*, 150 Wis. 2d 479, 487, 441 N.W.2d 710 (1989), *cert. denied*, 493 U.S. 1019 (1990)). The Court is not bound by an administrative agency's interpretation of the law, but may defer to it if the agency has experience, technical expertise and specialized knowledge that would aid in the interpretation. *Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992). However, if there is no evidence that the agency brings to the interpretation any special expertise or experience, and the question of law is one of first impression, the

court will review the agency's interpretation of the law *de novo. Coutts v. Wisconsin Retirement Bd.*, 209 Wis. 2d 655, 664, 562 N.W.2d 917 (1997).

¶ 12. This is a case of first impression, apparent from the fact that the ALJ did not rely on published precedent or promulgated rules.[9] *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 245–46, 493 N.W.2d 68 (1992). In addition, there is no evidence here that the DWD brings any special expertise in determining the scope of federal pre-emption. *Miller Brewing Co.*, 210 Wis. 2d at 34. Accordingly, while we benefit from the DWD's decision and the *de novo* reviews thereof by the circuit court and court of appeals, we, too, review the DWD's decision *de novo. Id.* at 33–34; *Aurora Medical Group*, 230 Wis. 2d at 403.

[9] The ALJ indicated, however, that the reasoning in an unpublished decision from the U.S. District Court for the Eastern District of Wisconsin, *Bean v. Aid Ass'n for Lutherans*, No. 94-C–569, unpublished slip op. (E.D. Wis. July 17, 1995) was persuasive. In *Bean*, the District Court held that the defendant had improperly removed plaintiff's complaint to federal court. *Id.* at 6. That complaint alleged that the defendant had violated the Wisconsin FMLA by denying plaintiff's request to substitute paid sick leave for unpaid family leave. *Id.* at 1. The court determined that, contrary to the defendant's argument, ERISA did not pre-empt the Wisconsin FMLA in light of the legislative history of the federal FMLA; and thus, ERISA did not provide a basis for removal. *Id.* at 2–6.

9

III.

A. GENERAL PRINCIPLES OF FEDERAL PRE-EMPTION

¶ 13. According to the Supremacy Clause of the U.S. Constitution, federal law "shall be the supreme law of the land." U.S. Const. art. VI, cl. 2. Federal law may pre-empt state law in one of three ways: (1) expressly, (2) by implication, or (3) by a direct conflict between federal and state law. *Miller Brewing Co.*, 210 Wis. 2d at 34; *see also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). Despite the Supremacy Clause and the varied types of pre-emption, the starting point for determining whether a state law is pre-empted is a presumption against pre-emption. *Miller Brewing Co.*, 210 Wis. 2d at 35. "[W]e have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *Travelers*, 514 U.S. at 654.

¶ 14. Where federal law would bar a state action in an area which the state traditionally regulates—within "the historic police powers"—the presumption against pre-emption must be overcome by showing that it is "the clear and manifest purpose of Congress" that federal law supersedes state law. *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 325 (1997) (quoting *Travelers*, 514 U.S. at 655); *Gorton v. American Cyanamid Co.*, 194 Wis. 2d 203, 215–16, 533 N.W.2d 746 (1995), *cert. denied*, 576 U.S. 1067 (1996);

10

*Miller Brewing Co.*, 210 Wis. 2d at 35.[10] The historic police powers of the State include labor standards, as well as matters of health and safety. *Miller Brewing Co.*, 210 Wis. 2d at 35–36; *see also De Buono v. NYSA-ILA Med. and Clinical Serv. Fund*, 520 U.S. 806, 814 (1997) (citing *Hillsborough County v. Automated Med. Lab., Inc.*, 471 U.S. 707, 715 (1985)). Such matters are clearly implicated by the provisions of the Wisconsin FMLA at issue here.

¶ 15. The burden of establishing pre-emption rests with the party seeking the benefit of pre-emption. *Miller Brewing Co.*, 210 Wis. 2d at 35; *De Buono*, 520 U.S. at 814. That burden is a "considerable" one, which requires "overcoming 'the starting presumption that Congress does not intend to supplant state law.' " *De Buono*, 520 U.S. at 814 (quoting *Travelers*, 514 U.S. at 654). Since pre-emption turns on congressional intent, we look first to the text of ERISA. "[W]e begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *Travelers*, 514 U.S. at 655 (citations omitted); *McDonough v. Department of Workforce Dev.*, 227 Wis. 2d 271, 277, 595 N.W.2d 686 (1999).

## B. SPECIFIC PRINCIPLES OF ERISA PRE-EMPTION

---

[10] In both *California Div. Of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316 (1997), and *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), the Supreme Court used the words "assumption" and "presumption" interchangeably to describe the presumption against pre-emption. *See Dillingham*, 519 U.S. at 325; *Miller Brewing Co. v. DILHR*, 210 Wis. 2d 26, 35 n.9, 563 N.W.2d 460 (1997).

¶ 16. The primary objective of ERISA is to protect employees from the mismanagement of funds set aside to finance employee benefits and pensions by establishing a comprehensive regulatory scheme that required employers to fulfill certain reporting, disclosure and fiduciary duties. *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). ERISA is "expressly concerned [with] 'reporting, disclosure, fiduciary responsibility and the like.' " *Dillingham*, 519 U.S. at 330 (citing *Travelers*, 514 U.S. at 661).

¶ 17. Section 514(a) of ERISA provides that it "shall supersede. . .all State laws insofar as they. . .relate to any employee benefit plan." 29 U.S.C. § 1144(a). Even though this language may appear at first glance to be clear and unambiguous, over the nearly 20 years the United States Supreme Court has looked at ERISA pre-emption, it concluded that the pre-emption provision is "not a model of legislative drafting." *John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank*, 510 U.S. 86, 99 (1993) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987)). The term "relate to" is decidedly indeterminate; it does not limit ERISA pre-emption in any material way because "really, universally, relations *stop nowhere.*" *Travelers*, 514 U.S. at 655 (quoting H. James, Roderick Hudson xli (New York ed., World's Classics 1980)).

¶ 18. Early ERISA pre-emption cases interpreted the phrase "relate to" literally, pre-empting state laws that "had a clear 'connection with or reference to' " employee benefit plans. *De Buono*, 520 U.S. at 813 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). Where state laws do not have an express reference to ERISA, the Court was left with attempting to determine the scope of the term "connection with."

[T]his still leaves us to question whether the [state] laws have a "connection with" the ERISA plans, and here an uncritical literalism is no more help than in trying to construe "relate to." For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to *the scope of the state law that Congress understood would survive.*

*Travelers*, 514 U.S. at 656 (emphasis added).

¶ 19. One objective of ERISA is evident from the same section that sets forth the scope of ERISA pre-emption, § 514, namely, that ERISA is not to be "construed to alter, amend, modify, invalidate, impair or supersede" any other federal law. 29 U.S.C. § 1144(d). Correspondingly, Congress did not intend that ERISA pre-empt state law that follows from federal law or that federal law encourages. *Dillingham*, 519 U.S. at 330; *Travelers*, 514 U.S. at 665–67; *Shaw*, 463 U.S. at 100–102. Such pre-emption would, in effect, supersede federal law in violation of § 514(d) of ERISA. *Shaw*, 463 U.S. at 100–102; *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 744 n.21 (1985)(Congress did not intend ERISA to pre-empt state minimum mental health benefits law in part due to the federal McCarran-Ferguson Act that reserves insurance regulation to the States).

## IV.

¶ 20. In the present case, Aurora argues that no presumption against pre-emption exists here,[11] and, if

[11] Aurora also argues that the presumption against pre-emption was "moot" because the DWD determined in *Thompson*

it did, it has overcome the presumption against pre-emption because the Wisconsin FMLA substitution provision "relates to" its sick leave plan. Aurora relies upon *Shaw*, 463 U.S. at 97, specifically that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." According to Aurora, the substitution provision requires employers to pay ERISA benefits they would not have otherwise paid; and thus, the provision makes reference to, as well as has a connection with, ERISA plans.

¶ 21. We reject Aurora's arguments. The presumption against pre-emption exists here. There is no indication that Congress intended to abandon traditional pre-emption principles when it enacted ERISA. "[W]e discern no solid basis for believing that Congress, when it designed ERISA, intended fundamentally to alter traditional pre-emption analysis." *John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank*, 510 U.S. at 99. It would be indeed "unsettling" if § 514(a) pre-empted state law in areas of traditional state regulation or laws that had only an indirect effect on ERISA plans.[12] *Dillingham*, 519 U.S. at 330–31; *Travelers*,

---

*v. Northwest Airlines, Inc.*, ERD Case No. 9052160 (7/12/91), that an employee could not substitute accrued sick leave benefits provided under an ERISA plan for unpaid family leave under the Wisconsin FMLA. However, this case was decided prior to the enactment of the federal FMLA which casts doubt on the extent of ERISA pre-emption in the area of family and medical leave.

[12] Aurora contends that ERISA pre-empts even those state laws not designed to affect ERISA plans or affects plans indirectly, relying upon *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41 (1987). This is incorrect, as evidenced by *Dillingham* and *Travelers*, both of which dealt with state laws not designed to affect

514 U.S. at 665. These historic police powers are not to be superseded by federal law unless such is the clear and manifest purpose of Congress. *See Gorton,* 194 Wis. 2d at 216. There is no dispute here that the Wisconsin FMLA's substitution provision is within the area of traditional state regulation.

¶ 22. The Wisconsin FMLA's substitution provision has no reference to, nor clear connection with, ERISA plans. It makes no express reference to employee benefit plans. *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130 (1992). Employees can substitute accrued leave for unpaid family leave (*Richland Sch. Dist. v. DILHR,* 174 Wis. 2d 878, 498 N.W.2d 826 (1993)), "whether or not its funding apparatus is of a kind as to bring it under ERISA." *Dillingham,* 519 U.S. at 328. The substitution provision "functions irrespective of. . .the existence of an ERISA plan." *Id.* (quoting *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 139 (1990)).

¶ 23. Nor is there any connection between the substitution provision and ERISA plans. As the United States Supreme Court has indicated, almost anything could have a connection with anything else, rendering that test unhelpful. *Travelers,* 514 U.S. at 656. We "look instead to the objectives of the ERISA statute as a

ERISA plans but that nonetheless indirectly affected such plans. *Pilot Life* is inapposite. There was no dispute, as there is here, whether the common law contract and tort claims "relate to" an ERISA plan. *Id.* at 48. In addition, § 502(a) of ERISA provides a "comprehensive civil enforcement scheme" indicating that Congress intended to bar parallel state law claims. *Pilot Life,* 481 U.S. at 54. There is no similar evidence here that Congress intended to bar state family leave rights. Rather, just the opposite is evident.

guide to the scope of the state law that Congress understood would survive." *Id.*

¶ 24. Aurora argues that pre-emption is justified because the substitution provision hinders ERISA's objectives to (1) minimize interference with the administration of employee benefit plans, and (2) promote national uniformity of those plans. The substitution provision does not sufficiently interfere with employee benefit plans to justify pre-emption. If the substitution provision interferes at all with Aurora's administration of an employee benefit plan, it is because Aurora set up its sick leave plan as an ERISA plan. This is not unlike the situation in *De Buono*, 520 U.S. 806. There, an ERISA fund was not protected by ERISA pre-emption from paying a state tax on hospitals because the fund chose to provide medical benefits by operating a hospital itself rather than purchasing those benefits from a hospital. *Id.* at 816. The United States Supreme Court concluded that, even though the tax imposed "some burdens on the administration of ERISA plans," *id.* at 815, this was not enough to warrant pre-emption.

> Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute.

*De Buono*, 520 U.S. at 816 (footnote omitted).[13]

---

[13] Similarly, ERISA does not pre-empt state garnishment laws even though garnishment proceedings would impose administrative burdens and costs upon employee benefit plans. *Mackey v. Lanier Collection Agency and Serv., Inc.*, 486 U.S. 825 (1988). ERISA does not pre-empt state law that required hospitals to collect surcharges from HMO's (health maintenance

¶ 25. The substitution provision's "indirect, economic effect[ ]" here is "a result no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate." *Travelers*, 514 U.S. at 668.

> Indeed, if ERISA were concerned with any state action. . .that increased costs of providing certain benefits, and thereby potentially affected the choices made by ERISA plans, we could scarcely see the end of ERISA's pre-emptive reach, and the words "relate to" would limit nothing.

*Dillingham*, 519 U.S. at 329 (citing *Travelers*, 514 U.S. at 660–661).

¶ 26. Consideration of the national uniformity of employee benefit plans does not require pre-emption of the substitution provision, either. Where a state law is within the area traditionally left to local regulation, and that state law promotes the purpose of other federal laws, there is no congressional intent of pre-emption.[14] *Travelers*, 514 U.S. 645. *Travelers* involved

---

organizations) and patients covered by commercial insurance even though the surcharges increased the costs of ERISA plans that used the commercial insurance or HMO's. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995). "If a law authorizing an indirect source of administrative cost is not pre-empted, it should follow that a law operating as an indirect source of merely economic influence on administrative decisions, as here, should not suffice to trigger pre-emption either." *Travelers*, 514 U.S. at 662. Also, ERISA does not pre-empt a state's prevailing wage statute even though it imposed administrative costs and burdens on apprenticeship programs covered by ERISA. *Dillingham*, 519 U.S. 316.

[14] Moreover, where state law promotes ERISA's primary purpose of protecting employees, ERISA does not pre-empt that law even though compliance therewith disrupts nationally uni-

a state law that imposed surcharges that increased the cost of ERISA plans in New York. 514 U.S. at 649. The United States Supreme Court rejected the argument that the law was pre-empted, concluding instead that there was congressional intent to encourage the kind of law that New York enacted. *Id.* at 664–667. The same Congress that passed ERISA passed the National Health Planning and Resources Development Act of 1974 (NHPRDA)[15] to encourage state efforts to address increased health care costs and the disparate health care coverage. *Travelers,* 514 U.S. at 665. The state law in question in *Travelers* also regulated health care rates. *Id.* at 649. ERISA pre-emption "would have rendered the entire NHPRDA utterly nugatory, since it would have left States without the authority to do just what Congress was expressly trying to induce them to do by enacting the NHPRDA." *Id.* at 667. The NHPRDA provided "indirect evidence" that Congress did not intend to pre-empt New York's surcharge law. *Dillingham,* 519 U.S. at 331 n.7 (discussing *Travelers*).[16]

---

form employee benefits. *See, e.g., Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724 (1985)(statute that mandated minimum mental health–care benefits not pre-empted but held to fall under ERISA's savings clause regarding state regulation of insurance, § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A)); *see also* ERISA § 514(b)(5), 29 U.S.C. § 1144(b)(5) (ERISA exempts from pre-emption Hawaiian Prepaid Health Care Act).

[15] *Travelers,* 514 U.S. at 665 (citing Pub. L. 93–641, 88 Stat. 2225, §§ 1–3, repealed by Pub. L. 99–660, title VII, § 701(a), 100 Stat. 3799).

[16] In *Dillingham,* California's state law regarding the apprenticeship programs followed a federal law known as the Fitzgerald Act that was enacted before ERISA. 519 U.S. at 319–320, 331 n.7. The Court concluded "Congress' silence on the

18

¶ 27. As evident from *Travelers*, ascertaining the objectives of ERISA to determine "the scope of the state law that Congress understood would survive" (514 U.S. at 656), requires us to look at the interplay between ERISA and other applicable federal laws. In looking for congressional intent, we start, as we would with our own legislature, with the language of the statute. *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d at 247 (citing *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991)). We cannot look at § 514(a) in isolation, but must also look at § 514(d) of ERISA and §§ 401(b) and 402(b) of the federal FMLA, as they all deal with the pre-emption issue at hand. "While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute." *Alberte v. Anew Health Care Serv., Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 51 (United States Supreme Court looked at federal McCarran-Ferguson Act as well as ERISA to determine pre-emption)).

¶ 28. That Congress did not intend to pre-empt the substitution provision of the Wisconsin FMLA is evident from the plain text of the federal FMLA, §§ 401(b) and 402(b).[17] 29 U.S.C. §§ 2651(b), 2652(b).

---

pre-emption of state statutes that Congress previously sought to foster counsels against pre-emption here." *Id.* at 331 n.7.

[17] We are thus not persuaded by Aurora's argument that had Congress intended for the federal FMLA to "trump" ERISA pre-emption, the statute would have stated such; or the Department of Labor, the agency that promulgates regulations under both ERISA and the federal FMLA, would have written a specific regulation regarding pre-emption. The federal FMLA

Section 401(b) provides the authority, even encouragement, for the States to enact "greater family or medical leave rights than the rights established under this Act. . . ." 29 U.S.C. § 2651(b). The substitution provision of the Wisconsin FMLA is such an enactment, providing a "greater family leave right" than the federal FMLA. Wis. Stat. § 103.10(5). If ERISA pre-empted the Wisconsin FMLA's substitution provision, § 401(b) would be rendered "utterly nugatory" and the States could not do exactly what Congress attempted to prompt the States to do.[18] *Travelers*, 514 U.S. at 667.

¶ 29. Section 402(b), as well as § 401(b), furnishes "indirect evidence" that Congress did not intend ERISA to supersede state laws like the Wisconsin FMLA. *See Dillingham*, 519 U.S. at 332 n.7. Section 402(b) provides that the "rights established for employees under this Act. . . shall not be diminished by. . .any employment benefit program or plan" within the mean-

---

unambiguously addresses ERISA pre-emption. That the Department of Labor has not is of no surprise or consequence in light of the fact that many courts have attempted to parse ERISA pre-emption, evident from the 2,800-plus opinions on the subject as of 1992. *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 135 n.3 (1992) (Stevens, J., dissenting).

[18] ERISA pre-emption would also render § 401(b) superfluous contrary to axiomatic statutory construction that a statute should be interpreted so that every provision is given full effect. *Mackey v. Lanier Collection Agency and Serv., Inc.*, 486 U.S. at 837. "[S]tatutes should be so construed that no word or clause shall be rendered surplusage." *Milwaukee County v. DILHR*, 80 Wis. 2d 445, 452–53, 259 N.W.2d 118 (1977) (quoting *Cook v. Industrial Comm'n*, 31 Wis. 2d 232, 239, 240, 142 N.W.2d 827 (1966)).

ing of ERISA.[19] By defining "employee benefit" by referring to ERISA, Congress apparently contemplated ERISA's potential effect on employee protection established under the federal FMLA, including access to greater benefits provided by the States under § 401(b), and, determined that such rights are not to be diminished by ERISA.

¶ 30. We conclude that Congress did not intend for ERISA to pre-empt the Wisconsin FMLA's substitution provision because pre-emption would "impair" the federal FMLA, as prohibited by ERISA § 514(d), 29 U.S.C. § 1144(d). It would impair the federal FMLA by frustrating its goals; one, that the States provide greater family or medical leave rights, and, two, that ERISA employee benefit plans not diminish employee rights advanced by the federal FMLA. *See Shaw*, 463 U.S. at 102–03 (ERISA pre-emption of state law where it did not conflict with Title VII would "modify" and "impair" federal law under § 514(d)); *see also Humana v. Forsyth*, 525 U.S. 299, 311 (1999) ("to 'impair' a law is to hinder its operation or 'frustrate [a] goal' of that law").

¶ 31. Aurora contends that this is use of the "double saving clause" approach rejected in *Shaw*, i.e., "that because ERISA does not pre-empt Title VII, and Title VII does not pre-empt state fair employment laws, ERISA does not pre-empt such laws." 463 U.S. at

---

[19] The federal FMLA defined "employment benefit" by directly referencing ERISA's definition of the same term.

> The term "employment benefits" means all benefits provided or made available to employees by an employer, including. . .sick leave. . .regardless of whether such benefits are provided. . .through an "employee benefit plan," as defined in [29 U.S.C.] section 1002(3) of this title.

29 U.S.C. § 2611(5).

101 n.22. We disagree. *Shaw* rejected an attempt to bootstrap a state law that prohibited what the federal law permitted at the time—pregnancy discrimination in health benefits—in order to avoid ERISA pre-emption.[20] *Id.* at 97. However, as the United States Supreme Court recently explained, "[w]e held in *Shaw* that the New York law was pre-empted *only to the extent it prohibited practices lawful under Title VII.*" *Humana v. Forsyth*, 525 U.S. at 310 (citing *Shaw*, 463 U.S. at 103) (emphasis added). *Shaw* did not pre-empt any other aspects of the New York law that followed and implemented Title VII. In fact, the Court held that pre-emption would "frustrate the goal" of Title VII to encourage joint state and federal enforcement of Title VII: "Such a disruption of the enforcement scheme contemplated by Title VII would, in the words of § 514(d), 'modify' and 'impair' federal law." *Shaw*, 463 U.S. at 102, (footnote omitted).

¶ 32. In *Shaw*, the state law was pre-empted insofar as the law extended beyond the scope of what Congress indicated by way of Title VII that it intended would survive ERISA pre-emption. Here, the federal FMLA indicates Congress' intent that the scope of state law that would survive pre-emption would extend beyond that which it permitted, to wit, state laws that provided "greater family leave rights." In contrast with the circumstances in *Shaw*, the Wisconsin FMLA does not prohibit that which is lawful under the federal FMLA; rather, the Wisconsin FMLA substitution provision does not only that which is lawful, but also

[20] Subsequently, Congress enacted the Pregnancy Discrimination Act of 1978, amending Title VII to cover pregnancy discrimination. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 88–89 (1983).

encouraged. Correspondingly, pre-emption here would impair the federal FMLA.

¶ 33. More importantly, in *Shaw* there was "no statutory language or legislative history suggesting that the federal interest in state fair employment laws extends any farther than saving laws from pre-emption by Title VII itself." 463 U.S. at 104 n.24. Here, we have both. Where Title VII only "preserves nonconflicting state laws," *id.* at 101, federal FMLA's § 401(b) preserves state laws "that provide[ ] greater family or medical leave rights than the rights established under this Act." 29 U.S.C. § 2651(b).

¶ 34. Moreover, the federal FMLA's legislative history shows a federal interest in state family and medical leave acts beyond saving those laws from pre-emption by the federal FMLA itself.[21] The legislative history indicates (1) that Congress intended to encourage the states to enact family and medical leave acts that provided a greater scope of protection than that afforded by the federal FMLA, and (2) that ERISA is not to pre-empt these state laws that give greater rights. According to the Senate Report,

> Section 401(b) also clarifies that state family leave laws at least as generous as that provided in S. 5

[21] Because we do not find the pertinent provisions of the federal FMLA ambiguous, and rely on the plain meaning of those provisions, it is unnecessary to look to the legislative history to determine the meaning of the statute. "If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning." *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). Nonetheless, the legislative history supports our conclusion. *State v. Oakley*, 2000 WI 37, ¶ 18, 234 Wis. 2d 528, 609 N.W.2d 786.

[the federal FMLA] (including leave laws that provide continuation of health insurance or other benefits, and paid leave), are not pre-empted by ERISA, or any other federal law.

S. REP. NO. 103–3, 103d Cong., 1st Sess. 38, *reprinted in* 1993–2 U.S.C.C.A.N. 3, 40.[22]

¶ 35. Assuming, *arguendo*, that ERISA § 514(a) pre-empted the Wisconsin FMLA's substitution provision in the first instance, the federal FMLA § 401(b) casts doubt on that pre-emption. Consequently, where ERISA might have been plain on its face, its interaction with federal FMLA raised an ambiguity. "Although the statutes are plain in their face, statutes may be rendered ambiguous by their interaction with other statutes." *McDonough*, 227 Wis. 2d at 278 (citing *State v. White*, 97 Wis. 2d 193, 198, 295 N.W.2d 346 (1980)). However, since both sections deal with pre-

---

[22] The House Report is silent as to ERISA pre-emption. Since we need only find "legislative history suggesting that the federal interest. . .extends. . .farther than saving [state] laws from pre-emption by [the federal FMLA] itself" (*Shaw*, 463 U.S. at 103 n.24), we need not explore the legislative history further, even though that history includes a colloquy among the federal FMLA's sponsor Senator Dodd of Connecticut and Wisconsin Senators Feingold and Kohl that supports the conclusion that Congress intended that ERISA not pre-empt the Wisconsin FMLA substitution provision. 139 CONG. REC. 2254 (daily ed. Feb. 4, 1993). Nor do we need to consider the letter from Congressional Research Service to the House of Representatives Committee that advises that the federal FMLA would have no impact on the scope of ERISA pre-emption. 139 CONG. REC. H396–03, *H412 (daily ed. Feb. 3, 1993). There is no evidence that a member of Congress adopted this view. *See Kelly v. Robinson*, 479 U.S. 36, 51 n.13 (1986) (statements at congressional hearing not made by member of Congress accorded no significance).

emption, "[i]t is our duty to construe statutes on the same subject matter in a manner that harmonizes them in order to give each full force and effect." *McDonough*, 227 Wis. 2d at 279–80 (quoting *State v. Aaron D.*, 214 Wis. 2d 56, 66, 571 N.W.2d 399 (Ct. App. 1997)). The only interpretation that would give both § 514(a) of ERISA and § 401(b) of the federal FMLA full effect is the one we adopt.

¶ 36. Our conclusion is further supported by general pre-emption principles. Whenever a question arises regarding pre-emption, the presumption against pre-emption comes back into play. *Miller Brewing Co.*, 210 Wis. 2d at 35. It is this presumption that Aurora failed to rebut. It is this presumption that has required us to determine whether Congress intended to pre-empt a state law such as the Wisconsin FMLA's substitution provision. We find this intent by looking at the objectives and plain meaning of both ERISA § 514(a) and (d), and of both § 401(b) and § 402(b) of the federal FMLA. There is no need for us to find, and we do not find, that the federal FMLA either amended or nullified the scope of ERISA pre-emption.

¶ 37. In summary, we conclude that Aurora has failed to establish that § 514(a) of ERISA pre-empts the Wisconsin FMLA substitution provision. First, Aurora has failed to establish that the substitution provision "relates to" employment benefit plans under § 514(a) of ERISA. Second, Aurora has failed to show a clear and manifest purpose by the Congress to pre-empt the Wisconsin FMLA substitution provision. Instead, evident from the federal FMLA, Congress intended to protect from pre-emption state laws that provide additional family leave rights. Congress also intended that these rights are not to be diminished by any employment

25

benefit plan. Third, Aurora is not able to show how ERISA pre-emption of state-provided family leave rights would not result in impairment of the federal FMLA in contravention of § 514(d) of ERISA. Accordingly, we conclude that Aurora has failed to carry its burden of overcoming the presumption against pre-emption. Thus, we affirm the decision of the court of appeals, which, in turn, affirmed the judgment of the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.