STATE of Wisconsin, Plaintiff-Respondent,†

v.

WISCONSIN CENTRAL TRANSPORTATION CORPORATION,
Defendant.

WISCONSIN CENTRAL LTD. and Fox Valley & Western
Ltd., Defendants-Third Party Plaintiffs-Appellants,

v.

James E. DOYLE, Attorney General of the State of Wisconsin and State of Wisconsin Department of Justice,
Third Party Defendants.

Court of Appeals

*No. 95–0070. Oral argument January 10, 1996.—Decided
February 28, 1996.*

(Also reported in 546 N.W.2d 206.)

†Petition to review granted.

451

On behalf of the defendants-third party plaintiffs-appellants, there were briefs by *Jon P. Axelrod* and *Joseph A. Ranney* of *DeWitt, Ross & Stevens, S.C.* of Madison and *David B. Potter* and *Jacob M. Holdreith* of *Oppenheimer, Wolff & Donnelly* of St. Paul, Minnesota. There were oral arguments by *Jon P. Axelrod.*

On behalf of the plaintiff-respondent, there were briefs by *James E. Doyle*, attorney general, *Thomas L. Dosch*, assistant attorney general, and *Susan K. Ullman*, assistant attorney general. There were oral arguments by *Thomas L. Dosch.*

On behalf of the Soo Line Railroad Company, there was an amicus curiae brief by *Patrick J. Nugent* of *Canadian Pacific Legal Services* of Minneapolis, Minnesota.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J.    Wisconsin Central Ltd. and Fox Valley & Western Ltd. (Wisconsin Central)[1] appeal from an order denying their motion for summary judgment. The single issue presented for review is whether § 192.255, STATS. (the "conductor law") is preempted by the Federal Railroad Safety Act (FRSA). Because we conclude that the conductor law is substantially subsumed by federal regulations promulgated under the FRSA, it is preempted.[2] We therefore reverse the trial

---

[1] Wisconsin Central Transportation Corporation is the holding company for the two named railroads. The railroads will be referred to collectively as "Wisconsin Central."

[2] Section 192.255, STATS., also includes qualifications for flagmen. The issue of preemption with regard to flagmen was not raised. This opinion addresses preemption of that part of the statute pertaining to conductors only.

court ruling and grant summary judgment for Wisconsin Central.

In 1988, the United Transportation Union, a labor organization representing some employees of other railroads, filed a complaint with the Wisconsin Department of Transportation (DOT) accusing Wisconsin Central of violating the conductor law. Based on this complaint, the DOT commenced an investigation. Wisconsin Central responded with an action in federal court, challenging the constitutionality of the conductor law.[3] The federal lawsuit was dismissed after the parties reached a settlement agreement.[4]

After the initial stay of the administrative proceeding had expired, Wisconsin Central returned to federal court, seeking a further injunction. That suit was dismissed when the federal court concluded that the State of Wisconsin had an important governmental interest in the enforcement of the conductor law.

Wisconsin Central again requested the Office of the Commissioner of Transportation (OCT) to stay any administrative proceedings pending the issuance of additional federal regulations. That stay was denied. The OCT report, which was issued following a public

---

[3] The state administrative proceeding was stayed pending a ruling in the federal action.

[4] This agreement stated that the Office of the Commissioner of Transportation would extend the existing stay in the administrative proceeding for six months. The motivation for the agreement was a belief that additional federal regulations then under consideration would be "sufficiently broad that all of [Wisconsin Central's] on-train personnel, including those previously referenced as conductors, will qualify for certification under the anticipated federal regulations." In exchange, Wisconsin Central agreed to dismiss the federal lawsuit without prejudice.

hearing and the filing of briefs, concluded that "it [was] likely that [Wisconsin Central] has violated and continues to violate § 192.255, Wis. Stats., in the manner in which it assigns conductors."

The state attorney general then brought an action seeking an injunction requiring Wisconsin Central to comply with the conductor law. Wisconsin Central filed a motion for summary judgment, arguing that the conductor law has been preempted by the FRSA. The trial court concluded that because the state law addresses only *conductor* standards, and federal regulations govern the training and certification of *engineers*, there was no preemption. Following denial of the summary judgment motion, Wisconsin Central requested immediate review of the resulting order. Pursuant to RULE 809.50, STATS., review was granted and this appeal followed.

■■■■■

Our review of a trial court's grant or denial of summary judgment is de novo, and we apply the same methodology as the trial court. *See Universal Die & Stampings v. Justus,* 174 Wis. 2d 556, 560, 497 N.W.2d 797, 799 (Ct. App. 1993). Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS.

The issue presented is whether state regulation of conductors is preempted by the FRSA. The relevant portion of the conductor law, § 192.255, STATS., is as follows:

**Qualifications of conductors and flagmen.**

**(1)** No person shall act or be engaged to act as a conductor on a railroad freight or passenger train in this state without having for at least three years

prior thereto served or worked in the capacity of a railroad brakeman.

This section now stands as the only section in ch. 192, STATS., which states qualifications for any railroad employee.[5]

The preemption issue presents a question of statutory construction. Construction of a statute is resolved without deference to the trial court. *Wisconsin Hosp. Ass'n v. Natural Resources Bd.,* 156 Wis. 2d 688, 705, 457 N.W.2d 879, 886 (Ct. App. 1990). In determining whether the conductor law is preempted, we first consider 49 U.S.C. § 20106, entitled "National uniformity of regulation." That section states in relevant part:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—
>
> (1) is necessary to eliminate or reduce an essentially local safety hazard;

---

[5] In response to *Chicago & N.W. Ry. v. LaFollette,* 43 Wis. 2d 631, 658, 169 N.W.2d 441, 454 (1969) (calling upon the legislature to review the full crew requirements), the legislature repealed §§ 192.25 and 192.26, STATS., 1969. *See* Laws of 1971, ch. 306, §§ 1, 2. In 1983, two remaining sections, § 192.23, STATS., 1981-82 (qualifications for railroad telegraphers) and § 192.24, STATS., 1981-82 (hours of duty for railroad employees), were also repealed. *See* 1983 Wis. Act 501, § 3.

(2)  is not incompatible with a law, regulation, or order of the United States Government; and

(3)  does not unreasonably burden interstate commerce.

■

In *CSX Transp., Inc. v. Easterwood*, 507 U.S. —, 113 S. Ct. 1732 (1993), the Supreme Court addressed the issue of preemption under the FRSA. Evidence of a preemptive purpose is first sought in the text and structure of the statute itself. *Id.* at 1737. If the statute contains an express preemption clause, the task of statutory construction must first focus on the plain wording of the clause, which contains the best evidence of Congress' preemptive intent. *Id.*

In *CSX Transp.*, the Court determined that the preemptive effect of the FRSA regulations was governed by "[45 U.S.C.] § 434, which contains express saving and pre-emption clauses."[6] *Id.* at 1736. The Court then focused its analysis on the two terms "related to" and "covering" as dispositive of Congress' preemptive intent.

■

The Court cited to *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383-84 (1992), in construing "related to." The Court there determined that the ordinary meaning of the phrase is broad. *Id.* at 383. The Court stated that the phrase "relating to" expressed a broad preemptive purpose, had an "expansive sweep" and was "conspicuous for its breadth." *Id.* at 383-84.

■

The *CSX Transp.* Court went on to consider the term "covering." The Court concluded that it is a more restrictive term. *CSX Transp.,* 507 U.S. at—, 113 S. Ct.

---

[6] 45 U.S.C. § 434 is now codified as 49 U.S.C. § 20106.

at 1738. The use of "relating to" in the saving clause and the more restrictive "covering" in the preemption clause suggests that the Congressional purpose was to allow states to enact regulations *relating to* railroad safety up to the point that federal legislation enacted a provision which specifically *covered* the same material. *See generally id.*

Use of these two terms in this statute led the Court to conclude that preemption will be found only if the federal regulations "substantially subsume the subject matter of the relevant state law." *Id.* at 1738. The "substantially subsumes" test requires a showing that FRSA regulations cover the same subject matter as state law. They must do more than "touch upon" or "relate to" the subject matter of the state law. *See id.*

In a case applying the *CSX Transp.* test which found preemption, a federal district court in Massachusetts held that an FRSA regulation which governed handholds on rail tank cars, mandating the number, size and location of the handrails, substantially subsumed the subject matter of the design and placement of the handrail on the tank car for purposes of a negligence action. *Ouellette v. Union Tank Car Co.,* 902 F. Supp. 5, 10 (D. Mass. 1995). The court reasoned that since the Secretary of Transportation had specifically addressed the safe design and placement of handholds on tank cars, a common law negligence action disputing their safe placement was preempted.

In the present case, the analysis must address whether the subject matter of the conductor law is substantially subsumed by federal regulations governing engineers. In making this determination, it is necessary to compare the historical distinctions between conductors and engineers with present day practices.

Historically, the conductor has been the crew member who "is in charge of the train and gives orders for its movement; he [or she] also is concerned with the condition and operation of the equipment." *Chicago & N.W. Ry. v. LaFollette,* 43 Wis. 2d 631, 649, 169 N.W.2d 441, 449 (1969). In contrast, the function of the engineer has been to operate *only* the locomotive; the conductor has had command of the overall governance of the train.

With technological advances, rail operations have changed dramatically, and the necessity of certain jobs and responsibilities has been eliminated. The historic requirement of a "five-man crew" (engineer, fireman, conductor, head brakeman and rear brakeman) has been reduced to only two crew members.[7] As a result of technological advances, Wisconsin Central assigns the direction and governance of the train, historically the job of the conductor, to its engineer.[8]

The trial court, in recognition of this change, determined that the conductor law requirement of three years of brakeman experience should "follow[ ] the assignment of the core duties of the conductor wherever those duties go" and that "[t]he company has chosen to assign the core duties of the conductor position to the engineer." Therefore, the court concluded,

---

[7] While it is not clear from the record how prevalent the two-person crew is among other railroads, there is no suggestion that Wisconsin Central's crew assignment practices are inadequate in any way.

[8] The report of the OCT recognized this fact when it stated:

[I]t is the conclusion of the Office that the . . . personnel designated as engineers on the Wisconsin Central Ltd. are not only engineers but are also conductors for the purpose of § 192.255, Wis. Stats. . . . [T]he engineer now carries extraordinary responsibilities and is, in effect, a combination engineer and conductor.

the engineer is also a conductor and is subject to the required experience as a brakeman.

This merging of the historically separate functions is also reflected by the federal regulations. The section of regulations governing engineers, 49 C.F.R. § 240.1(a), states:

> The purpose of this part is to ensure that only qualified persons operate a *locomotive or train.* [Emphasis added.]

Furthermore, according to 49 C.F.R. § 240.107(c)(1):

> Train service *engineers* may operate locomotives singly or in multiples and *may move them with or without cars coupled to them* .... [Emphasis added.]

Research did not uncover any reference in the applicable sections of the federal regulations specifically pertaining to conductors or their qualifications.

The Supreme Court has refused to resolve preemption issues by merely comparing the objectives of the federal and state regulations. *Missouri Pac. Ry. v. Railroad Comm'n,* 833 F.2d 570, 574 (5th Cir. 1987), citing to *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 (1963). "Federal superintendence of the field would be thwarted by such a mincing construction of whether FRA regulations 'cover the subject matter.' " *Missouri Pac. Ry.,* 833 F.2d at 574. The test of "covering the subject matter" must have a practical as well as a policy dimension under the FRSA. *Id.* Furthermore, for purposes of 49 U.S.C. 20106, a state regulation covers the same subject matter as an FRSA regulation if it addresses the same safety concerns as the federal regulation. *See Burlington N. R.R. v. State of Montana,* 880 F.2d 1104, 1105 (9th Cir. 1989).

The FRSA has promulgated extensive rules stating the requirements that must be met for all engineers. Because of modern railway practices, the state statute, purportedly applying to conductors, actually applies to engineers. This is conceded by the State when it cites approvingly the report of the OCT: "[T]he engineer now carries extraordinary responsibilities and is, in effect, a combination engineer and conductor." Because the traditional conductor functions have been subsumed into the duties of the engineer, the conductor law addresses the same safety concerns as the federal regulations for engineers.

In sum, the State argues that while the federal government prescribes minimum safety requirements for locomotive engineers, it has not done so concerning conductors. The State posits that because the two positions have differing job descriptions, the federal regulations do not subsume the field as to conductors. We conclude, however, that the federal term "train operators" incorporates the traditional conductor job description and, therefore, the federal law subsumes the field. The conductor law is thereby preempted by the federal regulation of engineers.

The application of 49 U.S.C. § 20106 does allow states to "adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order . . . is necessary to eliminate or reduce an essentially local safety hazard." *Id.* Because we have concluded that the conductor law is applicable to engineers, it represents an additional or more stringent law than the federal regulations. However, the State concedes that it "does not contend that sec. 192.255, Stats., relates to any

such localized hazard." Preemption cannot be denied on this basis.

We conclude that the subject matter of § 192.255, STATS., as it relates to conductors is substantially subsumed by the federal regulation of locomotive engineers. We therefore reverse the trial court and grant summary judgment to Wisconsin Central.

*By the Court.*—Order reversed.