FITZPATRICK, J.
*388 ¶ 1 A City of Weyauwega ordinance prohibits any train from obstructing, for more than ten minutes, any street or highway that crosses railroad tracks unless the train is in continuous motion. Wisconsin Central Ltd. is a railroad carrier whose trains obstruct the City's street and highway railroad crossings with some regularity. The City issued numerous citations to Wisconsin Central for alleged violations of the ordinance, and the City and Wisconsin Central litigated one of the citations. The Waupaca County Circuit Court concluded that Wisconsin Central violated the ordinance and rejected Wisconsin Central's contention that federal law pre-empts the ordinance. Wisconsin Central appeals and argues that the Federal Railroad Safety Act (FRSA), and regulations promulgated pursuant to the FRSA, pre-empt the City's ordinance. We conclude that the FRSA and its accompanying regulations preempt the City's ordinance and, accordingly, reverse the judgment of the circuit court.[1]
BACKGROUND
¶ 2 The following undisputed facts are drawn primarily from the parties' Joint Stipulation of Facts accepted by the circuit court.
*613 *389 ¶ 3 The City has an ordinance which states, in pertinent part:
No person shall leave standing or stop or permit or allow to stand or stop any railroad train, engine, or car upon any street or highway crossing within the City so as to obstruct public travel for a greater period of time than 10 minutes, unless such train or engine or car is continuously in motion.
WEYAUWEGA, WIS., CODE ch. 454, art. III, § 454-28 (2010).
¶ 4 Wisconsin Central is a railroad carrier that owns railroad tracks in the City and operates trains that pass through the City. Wisconsin Central's tracks cross streets and a highway at three points within the City, which we will refer to collectively as "the crossings." Wisconsin Central sometimes stops its trains in the City and, in doing so, blocks one, two, or all three of the crossings.
¶ 5 A portion of the City is located north of the Wisconsin Central tracks. Prolonged obstruction by a Wisconsin Central train at any one of the crossings forces all motor vehicles to take alternate routes to reach northern parts of the City. The City's police, fire, and emergency services vehicles are, when not in use, located south of the railroad tracks. The response time for police, fire, and emergency services vehicles to reach northern portions of the City can increase from about one minute to anywhere between twelve to fifteen minutes when Wisconsin Central trains obstruct some or all of the crossings.
¶ 6 In March 2015, a Wisconsin Central train stopped at and blocked one of the crossings for sixty-nine minutes, and the City issued a citation alleging that Wisconsin Central violated the ordinance. In a *390 stipulation ratified by the New London/Weyauwega Joint Municipal Court, the parties agreed to conduct a trial regarding that citation. The agreement incorporated by reference thirty-nine other pending citations issued by the City to Wisconsin Central for violating the ordinance, with proposed forfeitures totaling over $25,000.00. The parties agreed, in effect, that a final appellate decision as to that citation would apply with equal force to the remaining outstanding citations issued to Wisconsin Central.[2] The municipal court found in favor of the City after a trial on the citation.
¶ 7 Wisconsin Central appealed the municipal court judgment to the Waupaca County Circuit Court. See WIS. STAT. § 800.14. In denying Wisconsin Central's motion to dismiss, and in a separate decision based on the parties' stipulated facts, the circuit court rejected Wisconsin Central's pre-emption defense and entered judgment against Wisconsin Central.
¶ 8 Wisconsin Central now appeals. Other material facts will be mentioned in the Discussion which follows.
DISCUSSION
¶ 9 Wisconsin Central does not dispute that it violated the terms of the ordinance. Instead, Wisconsin *391 Central argues that the FRSA, and the federal regulations promulgated pursuant to that Act, pre-empt the *614 City's ordinance.[3] We agree with Wisconsin Central and conclude that the FRSA and its accompanying regulations pre-empt the ordinance.
I. Standard of Review and Construction of Statutes, Regulations and Ordinances.
¶ 10 We review de novo a circuit court's decision to grant or deny a motion to dismiss. See Lane v. Sharp Packaging Sys., Inc. , 2001 WI App 250, ¶ 15, 248 Wis.2d 380, 635 N.W.2d 896. "[W]hether federal preemption applies is a question of federal law that we review independently." Partenfelder v. Rohde , 2014 WI 80, ¶ 25, 356 Wis.2d 492, 850 N.W.2d 896 (quoting Blunt v. Medtronic, Inc. , 2009 WI 16, ¶ 13, 315 Wis.2d 612, 760 N.W.2d 396 ) (discussing FRSA preemption under 49 U.S.C. § 20106 ). FRSA pre-emption presents an issue of statutory construction which we resolve without deference to the circuit court. State v. Wisconsin Central Transp. Corp. , 200 Wis.2d 450, 456, 546 N.W.2d 206 (Ct. App. 1996), aff'd , 209 Wis.2d 278, 562 N.W.2d 152 (1997) (construing FRSA pre-emption under 49 U.S.C. § 20106 ). The interpretation of federal *392 regulations is also reviewed de novo. See Shaw v. Prentice Hall Computer Pub., Inc. , 151 F.3d 640, 642 (7th Cir. 1998). "The interpretation and application of an ordinance to an undisputed set of facts is a question of law, which this court decides de novo." Bruno v. Milwaukee Cty. , 2003 WI 28, ¶ 6, 260 Wis.2d 633, 660 N.W.2d 656.
¶ 11 We determine Congress' intent by construing the pre-emption sections of the FRSA.
Evidence of pre-emptive purpose is sought in the text and structure of the statute at issue. If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.
CSX Transp., Inc. v. Easterwood , 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (internal citations omitted) (construing 49 U.S.C. § 20106 ); see also Wisconsin Central , 200 Wis.2d at 457, 546 N.W.2d 206 ; Altria Grp., Inc. v. Good , 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008) (Congress' intent is " 'the ultimate touchstone' in every pre-emption case.") (quoting Retail Clerks Int'l Ass'n v. Schermerhorn , 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963) ). Similarly, in the context of federal pre-emption, our supreme court instructs: "[W]e begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." Aurora Med. Grp. v. DWD , 2000 WI 70, ¶ 15, 236 Wis.2d 1, 612 N.W.2d 646. "We apply general principles of statutory interpretation when construing federal regulations." Voces De La Frontera, Inc. v. Clarke , 2017 WI 16, ¶ 13, 373 Wis.2d 348, 891 N.W.2d 803. "We interpret ordinances *393 in the same manner as we interpret statutes because '[t]he rules for the construction of statutes and municipal ordinances *615 are the same.' " FAS, LLC v. Town of Bass Lake , 2007 WI 73, ¶ 21, 301 Wis.2d 321, 733 N.W.2d 287 (quoting Bruno , 260 Wis.2d 633, ¶ 6, 660 N.W.2d 656 ).
II. FRSA Pre-emption.
¶ 12 In 1970, and in response to a call for comprehensive rail safety regulation, Congress enacted the FRSA to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101 ; see also Partenfelder , 356 Wis.2d 492, ¶ 27, 850 N.W.2d 896 ; Burlington N. & Santa FeRy. Co. v. Doyle , 186 F.3d 790, 794 (7th Cir. 1999).[4] The FRSA grants the Secretary of Transportation "broad powers" to "prescribe ... regulations ... for every area of railroad safety." Easterwood , 507 U.S. at 662, 113 S.Ct. 1732 ; 49 U.S.C. § 20103(a) ; see also Partenfelder , 356 Wis.2d 492, ¶ 29, 850 N.W.2d 896.
¶ 13 "The pre-emptive effect" of the FRSA and those regulations "is governed by" an express pre-emption clause declaring that "[l]aws, regulations, and orders related to railroad safety ... shall be nationally uniform to the extent practicable."
*394 Easterwood , 507 U.S. at 662, 113 S.Ct. 1732 ; 49 U.S.C. § 20106(a)(1)[5] ; see also Norfolk S. Ry. Co. v. Shanklin , 529 U.S. 344, 347, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000). "To facilitate uniformity, the FRSA expressly preempts state law in areas covered by the FRSA." Partenfelder , 356 Wis.2d 492, ¶ 27, 850 N.W.2d 896 (citing 49 U.S.C. § 20106 ).
¶ 14 In two "saving clauses," the FRSA delineates circumstances in which states may nonetheless act regarding railroads. See Easterwood , 507 U.S. at 665, 113 S.Ct. 1732 ; CSX Transp., Inc. v. City of Plymouth , 283 F.3d 812, 815 (6th Cir. 2002) ("The FRSA therefore permits state regulation related to railroad safety only if" a saving clause is applicable.); 49 U.S.C. § 20106(a)(2).[6] The parties' arguments do not address the pre-emption language in 49 U.S.C. § 20106(a)(1). Sec. 20106(a)(1) ("Laws, regulations, and orders related to railroad safety ... shall be nationally uniform to the extent practicable."). Rather, Wisconsin Central and the City assume the existence of pre-emption and, instead, *395 dispute only the applicability of each saving clause, which we will now recount briefly. *616 ¶ 15 The first saving clause in 49 U.S.C. § 20106(a)(2) permits states to "adopt or continue in force a law, regulation, or order related to railroad safety ... until the Secretary of Transportation ... prescribes a regulation or issues an order covering the subject matter of the State requirement." Sec. 20106(a)(2). The second saving clause permits a state to adopt a more stringent law, regulation or order regarding railroad safety if it meets three requirements: (A) it is "necessary to eliminate or reduce an essentially local safety ... hazard"; (B) it is compatible with federal laws and regulations; and (C) it does not create an undue burden on interstate commerce. Sec. 20106(a)(2)(A)-(C) ; see also Easterwood , 507 U.S. at 662, 113 S.Ct. 1732.
¶ 16 Prior to discussing the saving clauses, we consider two issues introduced by the parties that are related to our analysis.
A. Local Enactments and Presumption Against Pre-emption.
¶ 17 As noted, the pre-emption saving clauses refer to a law, regulation or order of a "State" as a potential exception to pre-emption. See 49 U.S.C. § 20106(a)(2). The parties dispute whether local enactments, such as the City's ordinance, fall within the compass of those provisions.
¶ 18 Wisconsin Central contends that the majority of courts that have considered the issue have held that the phrase "State ... law, regulation or order" refers only to state, and not local, enactments. See, e.g. , *396 CSX Transp., Inc. v. City of Plymouth , 86 F.3d 626, 629 (6th Cir. 1996) ("Only state laws regulating areas in which there have been no regulations promulgated are excepted from the FRSA preemption clause."); Grand Trunk W. R.R. Co. v. City of Fenton , 439 Mich. 240, 247-48, 482 N.W.2d 706 (1992) (collecting cases).
¶ 19 The City counters that most of these cases are inapplicable because they antedate the Supreme Court's opinion in City of Columbus v. Ours Garage & Wrecker Serv., Inc. , 536 U.S. 424, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002), and that opinion is controlling. Ours Garage does not concern the FRSA. Instead, the Court considered whether a different pre-emption provision in Title 49 (the same chapter of the U.S. Code as the provisions at issue in this case) that referred only to the authority of a "State," also encompassed enactments of a municipality. Id. at 428, 122 S.Ct. 2226. The Court held that "[a]bsent a clear statement to the contrary, Congress' reference to the 'regulatory authority of a State' should be read to preserve, not preempt, the traditional prerogative of the States to delegate their authority to their constituent parts." Id. at 429, 122 S.Ct. 2226 (emphasis added).
¶ 20 In essence, the City proposes that we read Ours Garage to mean that any time a pre-emption provision in Title 49 of the U.S. Code refers to "State" laws or regulations, it should be read to include "local governmental" enactments. However, the City's argument ignores the concept of delegation, which appears to be pertinent to the Supreme Court's decision. Id. at 429, 437-38, 122 S.Ct. 2226. In making its argument, the City contends only that municipalities are considered "an arm of the State," and any municipal ordinance is "effectively an exercise of state power" but does not address whether the state has delegated any authority over railroad regulation to municipalities. Then again, neither *397 does Wisconsin Central address whether the state has delegated to municipalities authority over railroad regulation.
¶ 21 In light of the truncated arguments of the parties, and a less than obvious resolution to this question, we decline to decide this particular issue. Instead we will *617 assume, without deciding, that the City's ordinance qualifies as a "State" law or regulation pursuant to 49 U.S.C. § 20106(a)(2).
¶ 22 Next, the parties dispute whether we must apply a presumption against FRSA pre-emption in the context of our discussion of the saving clauses. We now briefly consider federal and Wisconsin authorities on this question, but conclude that we need not resolve the dispute.
¶ 23 In Easterwood , the Court noted a "presumption against pre-emption" in the FRSA context regarding purported pre-emption of a state common law cause of action, while recognizing that the wording of the statute is "the best evidence of Congress' pre-emptive intent." Easterwood , 507 U.S. at 664, 668, 113 S.Ct. 1732. The Wisconsin Supreme Court has, albeit outside FRSA pre-emption, called the presumption against pre-emption the "starting point" of pre-emption analysis, while also recognizing that pre-emption turns on Congress' intent. See Aurora , 236 Wis.2d 1, ¶¶ 13-15, 612 N.W.2d 646.
¶ 24 But, subsequent to Easterwood , the United States Supreme Court has recognized a presumption against pre-emption inconsistently and with considerably reduced (if any) force in cases in which there is an express preemption clause, such as the present case. See, e.g. , Puerto Rico v. Franklin California Tax-Free Tr. , --- U.S. ----, 136 S.Ct. 1938, 1946, 195 L.Ed.2d 298 (2016) ("And because the statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption but *398 instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.' " (quoted source omitted)); see also Altria , 555 U.S. at 99-102, 129 S.Ct. 538 (Thomas, J., dissenting) (noting that reliance on the presumption has waned in express pre-emption cases and collecting cases).
¶ 25 Moreover, since Easterwood , the U.S. Supreme Court has held that a presumption against pre-emption "is not triggered when the State regulates in an area where there has been a history of significant federal presence." United States v. Locke , 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000) (emphasis added). In areas where the federal interest is manifest, "there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers." Id . Thus, there may be no room for a presumption against pre-emption in an area like railroad safety, where federal regulation is pervasive. See CSX Transp., Inc. v. Williams , 406 F.3d 667, 673 (D.C. Cir. 2005) (quoting Locke , 529 U.S. at 108, 120 S.Ct. 1135 ) ("[T]he case for preemption is particularly strong where, as here, 'the State regulates in an area where there has been a history of significant federal presence.' ").
¶ 26 We also observe that express discussion of any presumption against pre-emption is not necessary in every case that considers FRSA pre-emption. See, e.g. , Partenfelder , 356 Wis.2d 492, ¶¶ 27-30, 57, 850 N.W.2d 896 (no discussion of pre-emption except in the dissent); Wisconsin Central , 200 Wis.2d at 455-58, 546 N.W.2d 206 (no discussion of presumption); Doyle , 186 F.3d at 794-96 (same).
¶ 27 We conclude that, regardless of whether we apply a presumption against pre-emption, it does not matter to the outcome because the meaning of each saving clause is plain, and the pertinent facts are not *399 in dispute. For those reasons, the force of any presumption is not dispositive, and we need not decide whether a presumption against pre-emption must be applied in this case. *618 ¶ 28 We now turn to the FRSA saving clauses.
B. The Ordinance is "Related To" Railroad Safety and Federal Regulations "Cover" the Subject Matter of the Ordinance.
¶ 29 As mentioned, pursuant to the FRSA's first saving clause, the City "may adopt or continue in force" an ordinance "related to railroad safety ... until the Secretary of Transportation ... prescribes a regulation or issues an order covering the subject matter " of the ordinance. 49 U.S.C. § 20106(a)(2) (emphasis added). We have held that, in creating that provision, Congress' "purpose was to allow [enactment of] regulations relating to railroad safety up to the point that federal legislation enacted a provision which specifically covered the same material." Wisconsin Central , 200 Wis.2d at 458, 546 N.W.2d 206.
¶ 30 The first saving clause requires us to decide three sub-issues disputed by the parties:
(1) Is the ordinance "related to" railroad safety?
(2) What is the "subject matter" of the ordinance?
(3) Do federal regulations "cover" the subject matter of the ordinance?
49 U.S.C. § 20106(a)(2) ; Doyle , 186 F.3d at 795. We address each sub-issue in turn.
1. The Ordinance is Related to Railroad Safety.
¶ 31 The Supreme Court has determined Congress' pre-emptive intent by focusing, as part of the *400 analysis, on the words "related to" in the first saving clause. Easterwood , 507 U.S. at 664, 113 S.Ct. 1732 ; see also Wisconsin Central , 200 Wis.2d at 457, 546 N.W.2d 206. The phrase "related to," as used by Congress in pre-emption statutes, means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." Morales v. Trans World Airlines, Inc. , 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). In construing the first FRSA saving clause, we have concluded that "relat[ed] to" has a broad meaning and "expresse[s] a broad preemptive purpose," with an "expansive sweep" that is "conspicuous for its breadth." Wisconsin Central , 200 Wis.2d at 457, 546 N.W.2d 206 (quoting Morales , 504 U.S. at 384, 112 S.Ct. 2031 ).
¶ 32 The City asserts that its "goal and purpose" in passing the ordinance was not to regulate railroad safety operations but, rather, to protect the health and safety of its citizens. We reject the City's reliance on its professed intentions because, whatever the City's motive may have been in enacting the ordinance, we must look to the ordinance's actual effect to determine whether it is related to railroad safety. See Wos v. E.M.A. ex rel. Johnson , 568 U.S. 627, 637, 133 S.Ct. 1391, 185 L.Ed.2d 471 (2013) ("In a pre-emption case ... a proper analysis requires consideration of what the state law in fact does, not how the litigant might choose to describe it.").
¶ 33 At any rate, we have no question that the ordinance is related to rail safety. As will be discussed in the next section, the ordinance regulates the movement of trains in that, once a train has stopped at a crossing, the entire length of the train must clear that crossing in less than ten minutes. As a result, the ordinance dictates when and where Wisconsin Central trains may be stopped and that stopped trains which block a crossing must accelerate after stopping so as to *401 clear the crossing in less than ten minutes regardless of the speed required of the train to do so. Moreover, the ordinance has no exception for a train stopped at the crossings because of accidents or other unsafe *619 conditions. In other words, in spite of any safety considerations, the City requires a stopped train to clear the crossings in the allotted period of time stated in the ordinance. Those facts lead us to the conclusion that the ordinance comes within the expansive definition of "related to railroad safety" already described. See Driesen v. Iowa, Chicago & E. R.R. Corp. , 777 F.Supp.2d 1143, 1150 (N.D. Iowa 2011) ("[L]aws related to the movement of trains through crossings, including blocked-crossing laws, are 'related to' railroad safety"); accord Village of Mundelein v. Wisconsin Cent. R.R. , 227 Ill. 2d 281, 290-91, 317 Ill.Dec. 664, 882 N.E.2d 544 (2008).
¶ 34 For those reasons, we conclude that the City's ordinance is related to railroad safety.
2. The Subject Matter of the Ordinance is the Regulation of the Operation and Movement of Trains.
¶ 35 The second sub-issue requires us to determine the "subject matter" of the ordinance. 49 U.S.C. § 20106(a)(2). The question of subject matter requires "some level of generalization." See Doyle , 186 F.3d at 796.
¶ 36 Wisconsin Central contends that the subject matter of the ordinance is the regulation of the operation and movement of trains. For its part, the City does not attempt to explicitly describe the subject matter of the ordinance. Rather, as best we can determine, the City relies on the same contention it used regarding the first sub-issue; that is, the "goal and *402 purpose" of the ordinance is to protect the health and safety of its citizens. Once again, the City's "goal and purpose" argument does not address the question before us because the argument does not address the effect of the ordinance. See Gade v. National Solid Wastes Mgmt. Ass'n , 505 U.S. 88, 105, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) ("In assessing the impact of a state law on the federal [pre-emption] scheme, we have refused to rely solely on the legislature's professed purpose and have looked as well to the effects of the law.").
¶ 37 But, the City does dispute Wisconsin Central's position on the subject matter of the ordinance. The City states the ordinance does not apply to trains in continuous motion and, so long as a train simply passes through the City and past the crossings without any stops, there is no violation no matter how long the train obstructs the crossings on its way through. From that premise, the City contends that the ordinance does not regulate the operation and movement of trains "in a literal sense."
¶ 38 The City's argument falls flat. Even as phrased by the City, the ordinance plainly regulates the operation and movement of trains because it allows only continuous movement of the train or a stop at a crossing for less than ten minutes. So, the ordinance regulates the operation and movement of trains in "a literal sense."
¶ 39 In addition, we agree with Wisconsin Central because the City's position fails to consider a scenario in which a train has stopped at a crossing. The ordinance states that no stopped train may block any of the crossings for more than ten minutes, and the only exception in the ordinance is for trains "continuously in motion." WEYAUWEGA, WIS., CODE ch. 454, art. III, § 454-28 (2010). By its clear terms, the ordinance *403 places Wisconsin Central in jeopardy of receiving a citation for violating the ordinance if one of its trains has stopped and obstructed one of the crossings for fewer than ten minutes, and then begun to move yet again. Because that train was not in continuous motion so as to comply with the ordinance, the train must clear the crossing it blocked while stopped before ten minutes elapse. *620 ¶ 40 In other words, Wisconsin Central has three options to comply with the ordinance: (1) Do not take its trains through Weyauwega; (2) Do not stop its trains in the City; or (3) If one of its trains stops and blocks a crossing, get the train moving again quickly so as not to block that crossing for more than ten minutes. See Village of Mundelein v. Wisconsin Cent. R.R. , 367 Ill. App. 3d 417, 428, 855 N.E.2d 230, 305 Ill.Dec. 339 (2006), aff'd , 227 Ill. 2d 281, 317 Ill.Dec. 664, 882 N.E.2d 544 (2008). Therefore, the ordinance regulates the operation and movement of trains whether the train is in continuous motion or stops at one of the crossings in the City.
¶ 41 To confirm the point, we observe that the vast majority of courts to have considered the issue of anti-blocking laws (such as this ordinance) have concluded that the subject matter of such laws is the operation and movement of trains at crossings. See Driesen , 777 F.Supp.2d at 1151 (collecting cases).
¶ 42 Further, any contention by the City that the subject matter of the ordinance is limited to the health and safety of its citizens does not hold water. Even assuming that the primary goal of the City is the promotion of the health and safety of its citizens, the mechanism here is the regulation of the operation and movement of trains. Thus, the subject matter is not limited to the health and safety of Weyauwega's citizens.
*404 ¶ 43 For those reasons, we conclude that the subject matter of the ordinance is the regulation of the operation and movement of trains. The question remains, then, whether federal regulations cover the subject matter of the ordinance.
3. Federal Regulations Cover the Operation and Movement of Trains.
¶ 44 Regarding the final sub-issue of whether federal regulations "cover" the subject matter of the ordinance, the Supreme Court has determined Congress' pre-emptive intent by focusing on the word "covering" in the statute. Easterwood , 507 U.S. at 664, 113 S.Ct. 1732 ; see also Wisconsin Central , 200 Wis.2d at 457, 546 N.W.2d 206. As compared to "related to," "covering" is a more restrictive term. Wisconsin Central , 200 Wis.2d at 457, 546 N.W.2d 206. Thus, to cover a subject matter, the federal regulations must do more than "touch upon" or "relate" to that subject matter. Easterwood , 507 U.S. at 664, 113 S.Ct. 1732 ; see also Wisconsin Central , 200 Wis.2d at 458, 546 N.W.2d 206. Rather, "pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant [ordinance]." Easterwood , 507 U.S. at 664, 113 S.Ct. 1732. In Wisconsin Central , we held:
''Federal superintendence of the field would be thwarted by such a mincing construction of whether FRA regulations 'cover the subject matter.' '' The test of ''covering the subject matter'' must have a practical as well as a policy dimension under the FRSA. Furthermore, for purposes of 49 U.S.C. § 20106, a state regulation covers the same subject matter as an FRSA regulation if it addresses the same safety concerns as the federal regulation.
*405 Wisconsin Central , 200 Wis.2d at 460, 546 N.W.2d 206 (quoted source omitted).
¶ 45 This determination "will necessarily involve some level of generalization that requires backing away somewhat from the specific provisions at issue." Doyle , 186 F.3d at 796. Thus, federal regulations need not be identical to local law for the federal regulations to "substantially subsume" the subject matter. Driesen , 777 F.Supp.2d at 1151 ; see also Doyle , 186 F.3d at 796. In the FRSA context, pre-emption may be found through a series of *621 related regulations and the overall structure of the statute. Doyle , 186 F.3d at 795 ; see also Easterwood , 507 U.S. at 674, 113 S.Ct. 1732 (finding pre-emptive intent by examining "the context of the overall structure of the regulations").
¶ 46 We now consider the federal regulations Wisconsin Central contends cover the subject matter of the City ordinance.
¶ 47 First, 49 C.F.R. §§ 213.9 (2017)[7] , 213.307, and 213.57 lay out maximum allowable operating speeds for trains. The Supreme Court has held that, when "[u]nderstood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation." Easterwood , 507 U.S. at 674, 113 S.Ct. 1732. As discussed, the ordinance's sole exception is for trains in continuous motion. So, once a train stops and obstructs a crossing in the City, the train must restart and move fast enough for the entire train to clear the crossing within ten minutes. As a result, the ordinance *406 reasonably affects Wisconsin Central's train length and speed if Wisconsin Central is to avoid violating the ordinance. Mundelein , 367 Ill. App. 3d at 426-27, 305 Ill.Dec. 339, 855 N.E.2d 230. In other words, "the regulation here is a regulation of train speed and length, although it applies only when a train stops at a crossing." Id. at 428, 855 N.E.2d 230, 305 Ill.Dec. 339. Thus, federal regulations cited by Wisconsin Central governing train speed cover the subject matter of the ordinance.
¶ 48 Second, federal railroad safety regulations concerning crossing safety control the speed of trains in the event that a crossing warning system malfunctions or fails. In some circumstances, the federal regulations require that a train stop before moving through a crossing. See 49 C.F.R. §§ 234.105, 234.106, 234.107. Wisconsin Central's compliance with the federal regulations regarding movement and stopping at a crossing will, under some circumstances, cause Wisconsin Central to violate the ordinance because the stop required by the federal regulation may cause one of its trains to block a crossing for more than ten minutes, and there is no exception in the City's ordinance for compliance with federal railroad safety regulations. These federal regulations work together with the regulations on train speed to substantially subsume, or cover, the subject matter of the operation and movement of trains at crossings. Mundelein , 227 Ill. 2d at 295-96, 317 Ill.Dec. 664, 882 N.E.2d 544.
¶ 49 Finally, federal regulation of air brake testing obligates railroad carriers to test brake systems when a train has stopped and restricts the operation and movement of the train until the tests are completed. See 49 C.F.R. §§ 232.201 - 232.219. We note once again that the ordinance does not contain an exception when obstructing a crossing results from Wisconsin Central's compliance with federal railroad safety regulations. As one example, if a Wisconsin Central train *407 adds cars while stopped and blocking a crossing within the City, federal regulations require a brake test, but Wisconsin Central may be unable to comply with these federal regulations in the time allowed under the ordinance. 49 C.F.R. § 232.211 ; see also Mundelein , 227 Ill. 2d at 295, 317 Ill.Dec. 664, 882 N.E.2d 544.[8] Therefore, when federal *622 regulations require a mandatory brake test while a Wisconsin Central train is obstructing any one of the crossings, compliance with both the federal regulations and the ordinance may be impossible. See Driesen , 777 F.Supp.2d at 1152-53 ; accord Krentz v. Consolidated Rail Corp. , 589 Pa. 576, 601-02, 910 A.2d 20 (2006). So, federal regulations substantially subsume whether and when a stopped train can move. The regulations thus indisputably cover the subject matter of the ordinance because the ordinance requires any stopped train to move and clear the crossings within ten minutes.
¶ 50 We emphasize that we are viewing the regulations individually and as an interconnected scheme. In light of the Supreme Court's holistic analysis of regulations in Easterwood , we conclude that the *408 specific regulations described and the overall structure of federal regulations should be understood as covering the subject matter of the ordinance; that is, operation and movement of trains at the crossings. See Driesen , 777 F.Supp.2d at 1151 ; accord Mundelein , 367 Ill. App. 3d at 429, 305 Ill.Dec. 339, 855 N.E.2d 230.
¶ 51 Accordingly, we conclude that federal regulations concerning train speed, crossing safety, and air brake testing cover the subject matter of the City's ordinance and, in this case, there is no exception to pre-emption pursuant to the first saving clause of 49 U.S.C. § 20106(a)(2).
C. The Second Saving Clause Is Not Satisfied.
¶ 52 We next consider whether the City's ordinance meets the requirements of the second saving clause. That clause states that the ordinance survives pre-emption if it: (A) "is necessary to eliminate or reduce an essentially local safety ... hazard;" (B) "is not incompatible with a law, regulation, or order of the United States Government;" and (C) "does not unreasonably burden interstate commerce." 49 U.S.C. § 20106(a)(2)(A)-(C). The second saving clause is written in the conjunctive, so the ordinance must satisfy all three requirements to be excepted from pre-emption. We conclude that the ordinance does not address an essentially local safety hazard, and for that reason, the ordinance fails to satisfy the requirements of the second saving clause.
¶ 53 An essentially local safety hazard is a "local situation[ ] which [is] not statewide in character and not capable of being adequately encompassed within national uniform standards."
*409 Duluth, Winnipeg & Pac. Ry. Co. v. City of Orr , 529 F.3d 794, 798 (8th Cir. 2008) (quoting National Ass'n of Regulatory Utils. Comm'rs v. Coleman , 542 F.2d 11, 14-15 (3d Cir. 1976) ). "If the local situation is actually statewide in character or capable of being adequately encompassed within national uniform standards, it will not be considered an essentially local safety hazard." Id. The legislative history of the FRSA supports a narrow interpretation of this requirement:
The purpose of [this saving clause] is to enable the states to respond to local situations not capable of being adequately *623 encompassed within the uniform national standards.
Id. (quoting H.R. REP. NO. 91-1194, at 11 (1970), as reprinted in 1970 U.S.C.C.A.N. 4104, 4117).
¶ 54 In Orr , the Eighth Circuit Court of Appeals considered whether a combination of facts created an "essentially local safety hazard." Id. at 797-98. These factors included the track's proximity to a lake; the swampy soil on which the track was located; the proximity of propane tanks to the tracks; the proximity of churches and business to the tracks; and extreme seasonal temperature changes. Id. The Eighth Circuit held that this confluence of factors did not create an essentially local safety hazard. Id. at 799. The court emphasized that an essentially local safety hazard must be unique to the locale, and that not one of the five factors was unique to the City of Orr. Id. at 798-99.
¶ 55 In support of its position that this is not a local safety hazard, Wisconsin Central relies on stipulated facts which show that rail lines were laid out in many Wisconsin communities in a fashion similar to that which exists in Weyauwega. In those communities, *410 and in order to take advantage of a flat grade, roads were often located parallel and close to Wisconsin Central tracks. As communities grew up along those railroad tracks, roads, streets and highways were built across the tracks as happened in the City of Weyauwega.
¶ 56 In response, the City chides Wisconsin Central for making "unfounded proclamations" that other cities experience similar issues with blocked crossings.[9] Regardless, the City concedes that the location of the train tracks and the streets is not what makes this a local safety hazard. The City posits that "Weyauwega's geography and road layout vis-à-vis the locations of its emergency services" constitutes an essentially local safety hazard because the City's police, fire, and ambulance services are all located south of the Wisconsin Central tracks and, when a train obstructs one or more of the crossings, the response times for these services anywhere north of the tracks increase significantly.
¶ 57 We reject the City's position that the identified hazard is "essentially local."
¶ 58 First, the City does not point to any facts unique to the City of Weyauwega. The situation in Weyauwega is common in cities, towns and villages throughout Wisconsin. Any community which has railroad tracks that intersect with streets or a highway will have slower response times for police, fire or emergency services when a train obstructs an intersection *411 those vehicles attempt to use.[10] If we were to conclude that the situation in which Weyauwega finds itself is an "essentially local safety hazard," virtually every at-grade street crossing of a railroad track in Wisconsin would qualify for that exemption from pre-emption. Then, the exception would swallow the rule, and that was clearly not the intent of Congress. *624 ¶ 59 Second, the City has not demonstrated that this purported unique confluence of factors is incapable of being adequately addressed within national uniform standards. The City alleges that "the federal government also has done nothing to come up with a workable solution to Weyauwega's problem" and accuses the federal government of "apathy." From that, we discern that the City's real complaint is not that the federal government has failed to address the subject matter of train movement and operations at the crossings, but that it has done so inadequately . See CSX Transp., Inc. v. Williams , 406 F.3d 667, 672 (D.C. Cir. 2005). But, in analyzing the second saving clause, courts should not take the efficacy of federal government regulations into account. Id. The federal government is not required to address every conceivable combination of conditions and, when federal regulations do not address a particular combination of conditions, it does not follow that the resulting hazard is "essentially local." Orr , 529 F.3d at 799. *412 ¶ 60 Therefore, the ordinance is not necessary to reduce or eliminate an essentially local safety hazard. Because the second saving clause requires that all three of its elements must be met to avoid pre-emption, we need not reach the other two elements in order to conclude that the ordinance does not satisfy the requirements of the second saving clause.[11]
¶ 61 In sum, we conclude that the FRSA and its related regulations preempt the City's ordinance.
CONCLUSION
¶ 62 For the foregoing reasons, the judgment of the circuit court is reversed.
By the Court. -Judgment reversed.

This appeal was converted from a one-judge appeal to a three-judge appeal under Wis. Stat. Rule 809.41(3) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise stated.

More specifically, the parties agreed to the following. In the event that the municipal court ruled in its favor, the City will not prosecute the remaining citations or enforce its judgment until Wisconsin Central has exhausted all appeals. If the judgment stands after Wisconsin Central has exhausted all appeals, Wisconsin Central will not contest the prosecution of, or raise defenses to, the remaining citations. The parties also agree that, if an appellate court issues a final decision in favor of Wisconsin Central, and the basis of the decision is common to some or all of the remaining citations, the City will dismiss the remaining citations with prejudice.

The pertinent provisions of the FRSA are codified at 49 U.S.C. §§ 20101, 20103 and 20106 (2012). The FRSA was formerly codified at 45 U.S.C. §§ 421 -444, and was recodified without substantive changes in Title 49 as part of a recodification of rail safety laws in 1994. See Revision of Title 49, Pub. L. No. 103-272, 108 Stat. 745 (1994). The FRSA's pre-emption provision, 49 U.S.C. § 20106, was previously codified at 45 U.S.C. § 434. Several opinions interpreting the FRSA, including CSX Transportation, Inc. v. Easterwood , 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), refer to the prior U.S. Code sections. All citations to the U.S. Code are to the 2012 version unless otherwise stated.

Although federal court decisions, other than United States Supreme Court decisions on questions of federal law, do not bind us, we may follow federal court decisions that we find persuasive. See Derby v. Brenner Tank, Inc. , 187 Wis.2d 244, 248 n.4, 522 N.W.2d 274 (Ct. App. 1994) (agreeing with a federal court's pre-emption analysis). See also Partenfelder v. Rohde , 2014 WI 80, ¶ 30, 356 Wis.2d 492, 850 N.W.2d 896 (citing a federal district court decision regarding FRSA pre-emption).

We observe that 49 U.S.C. § 20106(a)(1) also declares that "laws, regulations, and orders related to railroad security shall be nationally uniform." Because neither party raises the issue of railroad security, our discussion focuses on the railroad safety aspect of applicable sections of the U.S. Code.

49 U.S.C. § 20106(a)(2) reads:
A State may adopt or continue in force a law, regulation, or order related to railroad safety ... until the Secretary of Transportation (with respect to railroad safety matters) ... prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order-
(A) is necessary to eliminate or reduce an essentially local safety or security hazard;
(B) is not incompatible with a law, regulation, or order of the United States Government; and
(C) does not unreasonably burden interstate commerce.

All citations to the Code of Federal Regulations are to the 2017 version unless otherwise stated.

The parties have stipulated to the following applicable facts pertinent to the movement of a train and brake testing. If a train is separated for any reason, such as for adding a block of cars, and then the train is put back together, a continuity test of the brakes must be done pursuant to federal regulations. That test confirms that there is a continuous unbroken line of air pressure throughout the train which allows the brakes to operate properly. The process required by federal regulations reduces the air pressure and then builds it back up so that the brake line pressure throughout the train reaches the required 75 psi in order for the train to operate. This can take a significant amount of time, especially in cold weather. It is not uncommon in wintertime for the continuity test to require a half hour to an hour to perform because of the impact cold weather has on restoring a train's brake line pressure.

Ironically, the City's brief lacks citations to the record in that section of the brief arguing that the ordinance is necessary to address an essentially local safety hazard. We remind counsel of their responsibilities to cite specific portions of the record in support of their positions. See Wis. Stat. Rule 809.19(1)(e), (3)(a)2.

In addition, the undisputed facts evident from a map in the record show that the vast majority of the City of Weyauwega is south of the Wisconsin Central railroad tracks and, based on that fact, it is reasonable to conclude that this is likely less of a problem in Weyauwega than in other communities in which the railroad tracks run through the center of town.

The parties also dispute whether the Interstate Commerce Commission Termination Act (ICCTA) pre-empts the ordinance. Because we hold that FRSA pre-empts the ordinance, we need not reach the issue of ICCTA pre-emption. See Barrows v. American Family Ins. Co. , 2014 WI App 11, ¶ 9, 352 Wis.2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").